UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLARD MCCULLEN,

Petitioner,

v.   Case No. 8:16-cv-2092-T-02JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

Respondent.
_____/

## ORDER

Willard McCullen, a Florida prisoner, timely filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) challenging his Hillsborough County conviction, along with a supporting memorandum of law (Dkt. 2). The Court ordered Respondent Secretary, Department of Corrections, to show cause why the relief sought in the petition should not be granted. (Dkt. 3). Respondent filed a response and the state court record. (Dkts. 7, 9). Mr. McCullen filed a reply. (Dkt. 14). Upon consideration, the petition will be denied.

### Background

Mr. McCullen was convicted after a jury trial of second degree murder with a firearm. (Dkt. 9, Ex. 1, Vol. 1, p. 87). The state trial court sentenced him to 35 years in prison, followed by five years of probation. (*Id.*, p. 100). The sentence included a 25-year mandatory minimum term. (*Id.*, p. 101). The state appellate court *per curiam* affirmed the conviction and sentence. (Dkt. 9, Ex. 4). Mr. McCullen filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, and an amended motion. (Dkt. 9, Ex. 5; Dkt. 9, Ex. 6, pp. 42-70). The state court summarily denied all but one claim. (Dkt. 9, Ex. 6, pp. 109-14). After conducting an evidentiary hearing on

the remaining claim, the state court entered a final order denying postconviction relief. (*Id.*, pp. 214-41). The state appellate court *per curiam* affirmed. (Dkt. 9, Ex. 9).

## Discussion

I. <u>Procedurally Defaulted Claims</u>

   A. *Exhaustion of State Court Remedies; Procedural Default*

A federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

   B. *Trial Court Error Claims*

In Ground One, Mr. McCullen argues that the trial court erred in allowing prosecution witness Tiffany Lively to testify about a letter that Mr. McCullen purportedly wrote to the victim. In Ground Two, he claims that the trial court erred when it did not allow Melody McCullen to testify about the victim's reputation for violence. Mr. McCullen alleges violations of his right to a fair trial under the Sixth Amendment and his right to due process under the Fourteenth Amendment.

When Mr. McCullen raised these issues on appeal, he presented them solely in terms of state

law. (Dkt. 9, Ex. 2, pp. 3-8). He did not allege any federal constitutional violations or cite any federal authority. (*Id.*). Because Mr. McCullen failed to notify the state appellate court that he was presenting federal claims, he did not satisfy the exhaustion requirement. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim.").

State procedural rules do not provide for second appeals. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within 30 days of the rendition of the sentence). Since Mr. McCullen therefore cannot return to state court to exhaust the federal claims, they are procedurally defaulted. *See Smith*, 256 F.3d at 1138. Mr. McCullen has not argued or established that either the cause and prejudice or the fundamental miscarriage of justice exception applies to excuse the default. Consequently, Grounds One and Two are barred from federal habeas review.

C.   *Ineffective Assistance of Trial Counsel Claims*

In Ground Five, Mr. McCullen claims that trial counsel was ineffective in not calling Sheila Parsons at trial. In Ground Six, Mr. McCullen argues that trial counsel was ineffective in not calling his minor son at trial. In Ground Seven, Mr. McCullen contends that he is entitled to relief based on the cumulative effect of trial counsel's alleged errors.

Mr. McCullen raised these claims in his amended postconviction motion. (Dkt. 9, Ex. 6, pp. 66-69). Respondent contends that these claims are unexhausted because Mr. McCullen did not raise them on collateral appeal. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In

Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial.");[1] *see also Boerckel*, 526 U.S. at 845 (the exhaustion doctrine requires that a prisoner give the state courts a full opportunity to resolve a federal constitutional claim "by invoking one complete round of the State's established appellate review process.").

Mr. McCullen did not identify or discuss any of these claims in his collateral appellate brief. (Dkt. 9, Ex. 7, pp. 3-9). Mr. McCullen asserts in his reply, however, that he properly exhausted the claims because he was not required to brief them. Florida Rule of Appellate Procedure 9.141(b)(3) applied to Mr. McCullen's collateral appeal. This rule provides that when a postconviction motion has been resolved after an evidentiary hearing was held on one or more claims, an initial brief "shall be served within 30 days of service of the record or its index." Fla. R. App. P. 9.141(b)(3)(C). Mr. McCullen argues that because the rule "does not specifically state that the claims summarily denied and not addressed at the evidentiary hearing require briefing[,]" this Court should conclude that he exhausted his claims. (Dkt. 14, p. 3).

The Second District Court of Appeal ("Second DCA"), which heard Mr. McCullen's appeal, has addressed the application of this rule. The Second DCA explained that between December 2000 and October 2010, its internal policy required briefing only for grounds that were denied after an evidentiary hearing. *Cunningham v. State*, 131 So.3d 793, 794 (Fla. 2d DCA 2012). A merits review of any summarily denied grounds was conducted automatically regardless of whether such grounds were briefed. *Id.* But the Second DCA abandoned this policy as of October 2010 and, when considering an appeal under rule 9.141(b)(3), "no longer conducts an independent review" of

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit).

4

summarily denied claims that were not briefed. *Id.* at 794-95. Therefore, when at least one postconviction claim was resolved after an evidentiary hearing, an appellant must brief all claims he wishes the Second DCA to review, including those claims summarily denied without a hearing. This new policy was in place when Mr. McCullen filed his appellate brief.[2]

Therefore, Mr. McCullen failed to exhaust these claims because he did not brief them on collateral appeal. *See Coolen v. State*, 696 So.2d 738, 742 n.2 (Fla. 1997) ("Coolen's failure to fully brief and argue [his] points constitutes a waiver of these claims." (citing *Duest v. Dugger*, 555 So.2d 849, 852 (Fla. 1990))). Mr. McCullen cannot return to state court to present the claims because state procedural rules do not provide for second collateral appeals. *See* Fla. R. Crim. P. 3.850(k) (stating that an appeal from a final order denying postconviction relief may be taken within 30 days of the rendition of the order). Accordingly, these claims are procedurally defaulted. *See Smith*, 256 F.3d at 1138.

Mr. McCullen states in his federal habeas petition that his postconviction appellate counsel did not raise these claims, that he does not know why counsel failed to do so, and that he asked counsel to raise all cognizable claims on appeal. (Dkt. 1, pp. 15, 17, 19). The Court interprets these statements as an argument that Mr. McCullen's postconviction appellate counsel was ineffective in not raising the claims, and that this ineffective assistance is cause to excuse the default. Ineffective assistance can constitute cause only when an attorney's error "amounted to a deprivation of the constitutional right to counsel." *Rivera v. Sec'y, Dep't of Corr.*, 737 Fed. App'x 946, 954 (11th Cir.

---

[2] Rule 9.141 was amended several times between the issuance of *Cunningham* in 2012 and the date when Mr. McCullen filed his appellate brief in 2015. None of these amendments affected the substance of Rule 9.141(b)(3). *See In re Amendments to Fla. Rules of Civil Procedure*, 102 So.3d 451, 484-85 (Fla. 2012); *In re Amendments to Fla. Rules of Criminal Procedure and Fla. Rules of Appellate Procedure*, 132 So.3d 734, 755-56 (Fla. 2013); *In re Amendments to Fla. Rules of Appellate Procedure*, 183 So.3d 245, 255 (Fla. 2014).

5

2018). But "[t]here is no federal constitutional right to an attorney in postconviction proceedings." *Id.* at 955. Accordingly, "ineffective assistance of postconviction counsel does not typically provide a basis for setting aside procedural default, and even less so in the case of appellate postconviction counsel." *Id.* Therefore, Mr. McCullen cannot establish the cause and prejudice exception by claiming that his postconviction appellate counsel was ineffective in not raising the claims. Mr. McCullen has not asserted another basis to establish the cause and prejudice exception. Nor has he argued or established that he meets the fundamental miscarriage of justice exception. Accordingly, Grounds Five, Six, and Seven are procedurally defaulted and are barred from federal habeas review.

II.   Merits Review

   A.   *Standard of Review Under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*

*v. Taylor*, 529 U.S. 362, 413 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Mr. McCullen's conviction and sentence, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

B. *Ground Three*

Mr. McCullen claims that the State's evidence was insufficient to rebut his showing of self-

defense. He asserts a violation of his right to due process under the Fourteenth Amendment. Respondent contends that this claim is unexhausted because Mr. McCullen did not raise it as a federal claim on direct appeal. Respondent is correct that Mr. McCullen presented his claim as one of state law. (Dkt. 9, Ex. 2, pp. 9-10).

However, it may be possible to exhaust a federal sufficiency of the evidence claim by presenting an analogous state claim in state court when the state and federal courts apply the same standard of review. *Mulnix v. Sec'y for Dep't of Corr.*, 254 Fed. App'x 763 (11th Cir. 2007). The sufficiency of the evidence standard applied by federal courts, and applied by the state court in Mr. McCullen's appeal,[3] asks whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Simmons v. State*, 934 So.2d 1100, 1111 (Fla. 2006). Rebutting a *prima facie* showing of self-defense is a part of the State's burden of proof to obtain a conviction. *See Fields v. State*, 988 So.2d 1185, 1188 (Fla. 5th DCA 2008) ("The burden of proving guilt beyond a reasonable doubt, including the burden of proving that a defendant did not act in self-defense, never shifts from the State."); *Jenkins v. State*, 942 So.2d 910, 914 (Fla. 2d DCA 2006) (stating that the prosecution's burden of establishing guilt "broadly includes the requirement that the State prove beyond a reasonable doubt that the defendant did not act in self-defense."). Accordingly, this Court assumes that Mr. McCullen exhausted his federal claim challenging the sufficiency of the evidence.[4]

Mr. McCullen fails to show entitlement to relief. Mr. McCullen fatally shot his cousin,

---

[3] On appeal, Mr. McCullen did not argue that Florida's distinguishable standard of review for circumstantial evidence cases applied. (Dkt. 9, Ex. 2, pp. 9-10). *See Preston*, 785 F.3d at 460-62.

[4] Mr. McCullen does not allege that the State failed to present sufficient evidence to establish the elements of second degree murder with a firearm. He only argues that the State failed to rebut his showing of self-defense. (Dkt. 1, pp. 9-10; Dkt. 2, pp. 14-16).

Devin Lively. It is undisputed that on the night of March 29, 2008, Mr. Lively's mother (and Mr. McCullen's aunt), Lillian Lively, was at Mr. McCullen's home helping babysit Mr. McCullen's three-year-old son. It is also undisputed that Mr. Lively became upset upon learning that his mother was at Mr. McCullen's home, that he drove to the home with his sister, Tiffany Lively, and that Lillian Lively let him inside.

Mr. McCullen testified to the following. He was asleep when Mr. Lively woke him up by shaking him and "palming" him. (Dkt. 9, Ex. 1, Vol. 5, pp. 477-78). Mr. Lively started arguing with him about money. (*Id.*, p. 479). Mr. McCullen politely asked Mr. Lively to leave several times. (*Id.*, p. 480). When Mr. Lively did not want to leave, Mr. McCullen retrieved his gun from a lock box and put the gun in his pocket. (*Id.*, pp. 480-81).

After Mr. Lively yelled at Mr. McCullen's son, Mr. McCullen again asked Mr. Lively to leave. (*Id.*, p. 483). Mr. McCullen and Mr. Lively were verbally arguing when Mr. Lively hit Mr. McCullen on the head, causing Mr. McCullen to fall on top of a coffee table. (*Id.*, pp. 483-84).[5] After he fell, Mr. McCullen reached for his gun, pointed it up at Mr. Lively, and pulled the trigger. (*Id.*, pp. 484-85). He stood up and shot Mr. Lively a second time. (*Id.*, p. 498). Lillian Lively helped Mr. Lively out of the home after the shooting, but Mr. Lively collapsed before he reached the bottom of the front steps. (*Id.*, p. 524).[6]

Mr. McCullen was afraid of Mr. Lively that night because Mr. Lively "was freaking out, acting crazy, acting very violent." (*Id.*, pp. 486, 496). Mr. McCullen shot Mr. Lively because he

---

[5] The parties stipulated that Mr. McCullen had been diagnosed with a benign brain tumor and had been "informed that a significant blow to his head could result in a head injury that would be fatal." (Dkt. 9, Ex. 1, Vol. p. 462).

[6] Police found Mr. Lively's body near the bottom of the steps. (Dkt. 9, Ex. 1, Vol. 2, pp. 35-36).

9

feared for his life, as he "didn't know if [Mr. Lively] was going to keep on trying to hit [him] again or come at [his] son or anything." (*Id.*, p. 499). Mr. McCullen was aware that Mr. Lively was a "pretty tough individual" who was known "to be involved in fights" and was also aware of Mr. Lively's past violent behavior. (*Id.*, pp. 486-89).

This Court assumes that Mr. McCullen's testimony established a *prima facie* showing of self-defense. *See Williams v. State*, 261 So.3d 1248, 1252 (Fla. 2019) ("In order to establish a prima facie case of self-defense, a defendant must show that he (1) was attacked in a place where he had a right to be, (2) was not engaged in any unlawful activity, and (3) reasonably believed it was necessary to use force to prevent death or great bodily harm."); *Michel v. State*, 989 So.2d 679, 681 (Fla. 4th DCA 2008) ("Under Florida law, a person is justified in using deadly force in self-defense when he or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm[.]").[7]

Accordingly, the State was required to rebut Mr. McCullen's showing of self-defense beyond a reasonable doubt. *See Fields*, 988 So.2d at 1188 ("Once a defendant makes a prima facie showing of self-defense, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense."). The State's rebuttal may be made by inferences in its case-in-chief. *Leasure v. State*, 105 So.3d 5, 13 (Fla. 2d DCA 2012).

In claiming that the State presented insufficient evidence to rebut his showing of self-defense, Mr. McCullen alleges that the State never contradicted his testimony. (Dkt. 1, pp. 9-10; Dkt. 2, pp. 15-16). But Mr. McCullen does not address the State's evidence. The State presented eyewitness testimony, expert witness testimony, and police testimony about physical evidence that established

---

[7] On appeal, the State did not argue that Mr. McCullen failed to make this showing. (Dkt. 9, Ex. 3, pp. 16-19).

a version of events inconsistent with Mr. McCullen's version. Mr. McCullen has not established that the State's evidence was insufficient to rebut his showing of self-defense beyond a reasonable doubt.

The State contended that Mr. McCullen became enraged during the argument and shot Mr. Lively out of anger. Lillian Lively and Tiffany Lively were both present at the time of the shooting. They testified to the following. Before the shooting, the two men engaged in a heated verbal argument about money and jobs, but the argument was not physical. (Dkt. 9, Ex. 1, Vol. 3, pp. 210-15; Dkt. 9, Ex. 1, Vol. 4, pp. 340-41, 378-79, 395). Specifically, Mr. Lively never struck or pushed Mr. McCullen. (Dkt. 9, Ex. 1, Vol. 3, p. 214; Dkt. 9, Ex. 1, Vol. 4, pp. 340-41, 395). Mr. McCullen said that he had a gun. (Dkt. 9, Ex. 1, Vol. 4, p. 340).

At some point, Mr. Lively started to leave. He was part way down the front steps when Mr. McCullen came to the front door, pointed the gun down towards Mr. Lively, and shot Mr. Lively twice. (Dkt. 9, Ex. 1, Vol. 3, pp. 219-22, 251-54; Dkt. 9, Ex. 1, Vol. 4, pp. 344-47, 361-62). Mr. Lively collapsed immediately. (Dkt. 9, Ex. 1, Vol. 3, pp. 223-24; Dkt. 9, Ex. 1, Vol. 4, p. 362). Either right before or after the shooting, Mr. McCullen said, "Get the fuck out[.]" (Dkt. 9, Ex. 1, Vol. 3, p. 228; Dkt. 9, Ex. 1, Vol. 4, p. 346).

This version of events was supported by the testimony of Dr. Leszek Chrostowski, the medical examiner who performed Mr. Lively's autopsy and who testified as an expert in the field of forensic pathology. (Dkt. 9, Ex. 1, Vol. 3, pp. 124, 128). Dr. Chrostowski testified that both bullets entered Mr. Lively's body in a downward path, consistent with the shooter's having been positioned higher than Mr. Lively. (*Id.*, pp. 133-34, 137-38, 149-50). He also testified that one of the bullets perforated Mr. Lively's aorta. (*Id.*, pp. 137, 139). After a person suffers such an injury, Dr. Chrostowski testified, that person would not be able to walk around, and would likely lose

consciousness and collapse within seconds. (*Id.*, pp. 139-40, 171). Therefore, Dr. Chrostowski opined, a person shot inside the living area of Mr. McCullen's home could not have walked to the front door and down the stairs. (*Id.*, pp. 141, 175).

Other physical evidence supported the State's theory. Police found a spent shell casing that would have fit Mr. McCullen's firearm on the ground next to Mr. Lively's body. (Dkt. 9, Ex. 1, Vol. 2, pp. 58, 73, 99-100).[8] Police also found blood outside near Mr. Lively's body, but did not find any blood inside the home. (*Id.*, p. 105). Nor did police observe any evidence of a struggle, including broken or overturned furniture, inside the home. (*Id.*, pp. 111-12; Dkt. 9, Ex. 1, Vol. 4, pp. 314-15).

Mr. McCullen has not shown that the State failed to meet its burden of proof. The State presented competent evidence disproving the version of events that Mr. McCullen claimed had led him to act in self-defense. Accordingly, Mr. McCullen fails to establish that, considering the evidence in the light most favorable to the prosecution, no rational trier of fact could have found that the State rebutted his showing of self-defense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. Because Mr. McCullen has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination, he is not entitled to relief on Ground Three.

C. *Ground Four*

Mr. McCullen argues ineffective assistance of trial counsel. His claim is analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established

---

[8] The other shell casing was never found, despite searches both inside and outside the home. (Dkt. 9, Ex. 1, Vol. 2, pp. 102-05).

if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

A petitioner must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt.").

Mr. McCullen claims that trial counsel was ineffective in not conveying the State's plea offer for a 20-year sentence. The state court denied this claim after an evidentiary hearing:

> In ground one, the Defendant alleges counsel was ineffective for failing to convey a favorable plea offer to the Defendant in a timely and thorough manner. The Defendant alleges the State made an offer of twenty years in Florida State Prison, but counsel did not inform him of the offer until after the judge inquired whether the Defendant had rejected all offers from the State. The Defendant also asserts counsel failed to discuss with him the details and ramifications of entering a plea. The Defendant asserts that if counsel had conveyed the twenty year plea offer to him, he would have accepted it.

> At the hearing on the Defendant's motion, trial counsel ... testified that he discussed the State's offer of twenty years of imprisonment with the Defendant on numerous occasions. [Counsel] also testified that they discussed their self-defense theory at length, and he advised the Defendant that he was facing a maximum of life in prison with a 25 year mandatory minimum term. [Counsel] testified that the Defendant rejected the State's offer. The Court finds [counsel's] testimony credible. After considering the testimony presented at the evidentiary hearing and the record, the Court finds the Defendant has failed to demonstrate that counsel was ineffective. As such, ground one is denied.

(Dkt. 9, Ex. 6, pp. 214-15).

The state court's order accurately reflects counsel's evidentiary hearing testimony. (*Id.*, pp. 231, 233-36). The state court's credibility determination is a finding of fact that is presumed correct, and this presumption can only be rebutted by clear and convincing evidence. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct unless [a petitioner] rebuts the presumption by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)(1)); *see also Bishop v. Warden, GDCP*, 726 F.3d 1243, 1259 (11th Cir. 2013) ("In the absence of clear and convincing evidence, [a federal court has] no power on federal habeas review to revisit the state court's credibility determinations."); *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.").

Mr. McCullen appears to contend that the record shows he was unaware of any plea offers, thereby demonstrating that counsel's evidentiary hearing testimony was not credible. Before the trial started, the court and parties addressed preliminary matters, including whether any plea offers had been made. The attorneys told the court that they had concluded all negotiations, and the prosecutor indicated that offers had been extended. (Dkt. 9, Ex. 6, pp. 73-74). The court asked Mr. McCullen

14

about any offers:

> THE COURT: All right. Mr. McCullen, have you rejected any and all offers to resolve this case short of trial?
>
> THE DEFENDANT: No, Judge.
>
> [COUNSEL]: Have you rejected all offers - -
>
> THE DEFENDANT: Oh, rejected - -
>
> THE COURT: Sir, I'm going to ask that question again, have you rejected, said no, to any offers to resolve this case through a plea?
>
> THE DEFENDANT: Yes. Yes.
>
> THE COURT: Okay. Pay close attention to me. Has the State given you an offer to resolve this by a plea?
>
> THE DEFENDANT: No, Judge.
>
> THE COURT: They haven't? Okay. Counsel, you're saying - - he's saying he gave an offer, he's saying he hasn't received an offer. You're the defense counsel.
>
> [COUNSEL]: I think he's confused, Judge. May I inquire, Judge?
>
> THE COURT: Yes.

(*Id.*, pp. 74-75).

Mr. McCullen contends that this part of the record proves that he did not know about any plea offers. But when counsel inquired further after suggesting that the questioning had confused Mr. McCullen, Mr. McCullen agreed that he had rejected a plea offer after discussing it with counsel:

> [COUNSEL]: Mr. McCullen, have we had discussions about you potentially accepting a Florida State Prison offer so that you didn't have to go to trial?
>
> THE DEFENDANT: Oh, yes, Judge.

15

[COUNSEL]: And have you and I had discussions about what that Florida State Prison offer was?

THE DEFENDANT: Yes.

[COUNSEL]: And have you and I had discussions that that was the only offer at this point that was available to you short of going to trial?

THE DEFENDANT: Yes.

[COUNSEL]: And you understand at this point that we've said no to all of those offers and we've decided to proceed to trial today?

THE DEFENDANT: Yes.

[COUNSEL]: And you understand that if we proceed to trial and if you are found guilty, that the maximum penalty for which [the court] can sentence you to Florida State Prison is life?

THE DEFENDANT: Yes.

[COUNSEL]: And you understand that if we were to lose as charged to a Second-Degree Murder offense based upon being - - as it's charged as being in possession of a firearm, it does carry a minimum-mandatory sentence?

THE DEFENDANT: Yes.

[COUNSEL]: And I've explained that minimum-mandatory sentence to you on several occasions?

THE DEFENDANT: Yes.

[COUNSEL]: And that was a 25-year minimum-mandatory Florida State Prison sentence; is that accurate?

THE DEFENDANT: Yes.

THE COURT: Okay. And the only inquiry - - I'm not putting any pressure on you, I'm just asking because I always make sure we have resolved those issues. Once again, any offer to settle this, you've rejected that; is that correct?

THE DEFENDANT: Yes.

(*Id.*, pp. 75-76).

Mr. McCullen has not presented clear and convincing evidence to rebut the presumption of correctness that attached to the state court's credibility finding.[9] The testimony that the court found credible demonstrates that counsel conveyed the State's offer to Mr. McCullen and repeatedly discussed it with Mr. McCullen, and that counsel also discussed the applicable mandatory minimum sentence with Mr. McCullen. Therefore, Mr. McCullen has not shown that counsel performed deficiently by failing to timely and thoroughly communicate the plea offer to him. Because Mr. McCullen has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Four.

Accordingly, it is **ORDERED** that:

1. The petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The Clerk shall enter judgment accordingly and is directed to close this case.

3. Mr. McCullen is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Mr. McCullen "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation omitted), or that "the issues presented were adequate to deserve encouragement

---

[9] Mr. McCullen's evidentiary hearing testimony indicates that he was "just going along" with counsel when he answered counsel's questions affirmatively. (Dkt. 9, Ex. 6, pp. 227-28). However, Mr. McCullen has not demonstrated that his evidentiary hearing testimony, in itself, constitutes clear and convincing evidence sufficient to rebut the presumption that the state court's credibility determination was correct.

to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation and citation omitted). Mr. McCullen has not made this showing. Because Mr. McCullen is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** at Tampa, Florida, on _July 12th_, 2019.

_____
WILLIAM F. JUNG
United States District Judge

<u>Copies furnished to</u>:
Counsel of Record